COLE, Circuit Judge,
dissenting.
Because I believe the state court’s resolution of Otte’s Miranda claim was contrary to clearly established federal law, and that the claim is meritorious on de novo review, I respectfully dissent.
The state court ran afoul of the “contrary to” clause of § 2254(d)(1) by analyzing Otte’s claim in a way that contradicts Miranda. See Dyer v. Bowlen, 465 F.3d 280, 288 (6th Cir.2006) (reviewing claim de novo after finding that the analytic approach taken by the state court conflicted with clearly established federal law). Looking, as we must, to clearly established Supreme Court precedent, the state court was fiat wrong to say that “evidence of police coercion” is required both to find that a Miranda waiver was involuntary and that it was not knowing and intelligent; it compounded the error by cabining its analysis in this incorrect framework. State v. Otte, No. 84455, 2005 WL 77071, at *1, *6 (Ohio App.Ct.2005).
True, Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), held that “coercive police activity is a necessary predicate to the finding that a confession is not ‘voluntary.’ ” Id. at 167, 107 S.Ct. 515. But this holding did not extend to the “knowing and intelligent” inquiry, and indeed could not have, because the Connelly petitioner conceded that his waiver was knowing and intelligent; his challenge was to voluntariness only. See id. at 161-62, 107 S.Ct. 515. Thus, clearly established Supreme Court precedent teaches that a court may find that Miranda rights were properly waived when both of two distinct inquires are resolved in favor of the government, the first being the voluntariness question covered by Connelly. The second requires a finding that the waiver was made “with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.” Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). “Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.” Id. (internal quotation marks omitted). Consequently, if a petitioner establishes that either of these commands were not met, habeas relief is proper. See Smith v. Mitchell, 567 F.3d 246, 257 (6th Cir.2009) (“[T]he question of whether a Miranda waiver was knowing and intelligent is a separate question.”). Because the state court adjudication reveals that this standard was not followed, we must review Otte’s Miranda claim de novo. See Dyer, 465 F.3d at 288.
Unbound by the strong deference required by AEDPA, we must grant the writ. Otte’s low IQ, side effects from alcohol withdrawal and his severe depression combined over multiple days of interrogation to prevent him from knowingly waiving his Miranda rights. The validity of *608 Otte’s waiver turns on the totality of “the particular facts and circumstances surrounding [Otte’s] case, including [his] background, experience, and conduct.” Edwards v. Arizona, 451 U.S. 477, 482, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)); see also Fare v. Michael C., 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979). Relevant to the inquiry, among other things, are “age, experience, education, background ... intelligence”'and cognitive capacity to understand “the nature of his Fifth Amendment rights, and the consequences of waiving those rights.” Fare, 442 U.S. at 725, 99 S.Ct. 2560.
The totality of the circumstances shows that Otte’s capacity was so diminished that he could not knowingly and intelligently execute a waiver. Otte was an alcoholic and drug abuser who drank an excessive amount of alcohol daily, and consumed marijuana and crack cocaine. The police arrested Otte at a bar the evening of February 13, 1992 after he had consumed beer and a large quantity of bourbon. He was interrogated for ninety minutes that night, but did not confess. After the interrogation he was sent to the hospital for a psychiatric evaluation in the early morning hours of February 14th. At 4:00 p.m. that day, he was questioned again by the police and confessed to the murders for the first time. That evening he was taken to the hospital again. The intake notes from his hospital admission stated that Otte was shaking uncontrollably as a consequence of alcohol withdrawal and was treated with Librium, a drug that reduces some of the symptoms of withdrawal, but also has sedative effects. Otte’s expert testified that alcohol withdrawal causes serious discomfort which impairs cognitive functioning. Though the State’s expert disagreed with the conclusion of Otte’s expert he conceded that alcohol withdrawal was a very dangerous and potentially life-threatening medical condition. On the 16th, Otte waived his Miranda rights again, but remained significantly impaired because he did not receive his prescribed dose of Librium that day. He created a noose a few days later and was sent to the hospital for a suicide attempt or suicidal ideation.
These psycho-chemical reactions would diminish anyone’s capacity to effectively engage in the higher-order mental processing required to waive a constitutional right. But Otte’s below-average IQ left him with less capacity to spare. The effects of drugs, withdrawal, depression, and exhaustion on Otte’s already-diminished cognitive abilities were far too serious for me to agree with my colleagues that Otte’s waiver was knowing and intelligent.
To the extent that the officer’s impression of Otte’s acuity is relevant to the inquiry, the record convincingly establishes that the officer’s knew of Otte’s diminished capacity. Otte went back and forth to the hospital on multiple occasions to receive treatment for withdrawal as well as a psychiatric evaluation. It strains credulity too much to say that the officers knew nothing of this parade of red flags. As for the conclusion of the state’s expert, its reliance on the officers’ incredible testimony, renders it unreliable.
For these reasons I would REVERSE the decision of the district court and GRANT Otte’s petition.